IN THE UNITED STATE S DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JAMES ROBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:24-cv-1923 |
| | ) |
| THE BOEING COMPANY | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant The Boeing Company's Motion for Summary Judgment.

Defendant, The Boeing Company, is a global aerospace company and defense contractor that develops, manufactures, and services commercial airplanes, defense products, and space systems used in over 150 countries. Boeing maintains an equal employment opportunity policy and military leave policy that prohibit discrimination based on military and veteran status and uniformed service obligations. It has reporting and complaint mechanisms for employees who believe they have suffered discrimination including notifying a manager or Human Resources, speaking with management, or submitting a complaint to an anonymous hotline.

1

Plaintiff was aware of Boeing's policies and reporting and complaint procedures. In addition to Boeing's complaint mechanisms, Plaintiff could pursue administrative complaints through the Office of Federal Contract Compliance Programs (OFCCP), the Department of Labor Veterans' Employment and Training Service (DOL/VETS), and/or a request for assistance through Employer Support of the Guard and Reserve (ESGR).

Boeing's military leave policy provides differential pay benefits for employees who are absent from their civilian employment for uniformed service. Plaintiff received differential benefits for his uniformed service in accordance with Boeing's policies.

As of 2017, Plaintiff believed he suffered USERRA discrimination. However, Plaintiff did not submit a complaint of discrimination to Boeing at any time during his employment. In August 2024, Plaintiff submitted a pre-complaint inquiry with the OFCCP related to "the VIVA [sic-VEVRAA] program." His OFCCP inquiry was still pending as of the date of Plaintiff's deposition.

In August 2015, Plaintiff applied for a position with Boeing as a Network & Fleet Planning ("NFP") Analyst. The hiring decision makers, Director Alex Heiter ("Heiter") and NFP Manager Bruce Tecklenburg ("Tecklenburg"), were fully aware that Plaintiff served in the U.S. Army Reserve at the time of his

hire. Plaintiff made clear during the hiring process that he would continue to serve as an Army reservist.

Boeing hired Plaintiff as an NFP Analyst Level 4 and he began his employment on August 28, 2015. Plaintiff's core responsibilities included analyzing the revenue and operational performance of Boeing aircraft, developing traffic and revenue forecasts, and using optimization models to demonstrate Boeing's financial advantages. Plaintiff was also responsible for creating strategic fleet plans, identifying new market opportunities, maintaining competitor intelligence, and supporting business case analyses.

At Boeing, Tecklenburg tracked "sales wins." A "sales win" describes the successful sale of a Boeing aircraft. Neither "Sales Wins" nor sales losses had an impact on an NFP Analyst's performance evaluations, compensation, opportunity for promotion, or advancement.

As to travel, Tecklenburg did a year in review presentation to share trivia about who traveled where, how many trips they took, and other miscellaneous information for "morale and fun so that everybody could reflect on…all the hard work they had done…." The travel contests were a type of recognition that was not directly tangible as to advancement in employment.

Tecklenburg devised a three-level tier system (i.e., Tier 1, Tier 2, and Tier 3) to help the NFP Department better

3

understand the workload associated with each airline. Tecklenburg described the classification system as a "Bruce Teckism," that he one "hundred percent made up."

Neither the tier designation of a particular airline (i.e., Tier 1, Tier 2, or Tier 3) nor the specific airline that was assigned to an NFP Analyst had an impact on that individual's performance, compensation, or advancement opportunity. Instead, NFP Analysts were evaluated on the quality of their work in support of the sales teams that they serviced.

Plaintiff was assigned to the Hawaiian Airlines account as the supporting NFP Analyst in September 2015. Pursuant to Tecklenburg's tier system, Hawaiian Airlines was designated as a "Tier 2" account. Boeing's then-Senior Vice President of Global Sales & Marketing, Ihssane Mounir ("Mounir"), directly oversaw the Hawaiian Airlines account during the time Plaintiff was assigned to the account. Boeing's intent for the campaign to best support Hawaiian was to focus on the sale of 787-9s and 787-10s, not 787-8s.

In September 2017, the team assigned to the Hawaiian Airlines account had a review of the account with Mounir. During the meeting, Mounir reviewed the completed sales presentation slideshow and had several questions regarding the NFP portion, which focused on the sale of 787-8s.

4

Mounir made the decision to remove Plaintiff from the Hawaiian Airlines account in September 2017 due to what he perceived to be performance shortcomings that were misaligned with the needs of the customer and overall account. Plaintiff testified that Mounir tried to find faults and criticisms in that meeting but has "never said anything related to his military service."

In October of 2017, Mounir removed other individuals assigned to the Hawaiian Airlines account including Cheryl Zhang. Zhang was not involved in the decision to remove Plaintiff from the Hawaiian Airlines account. Zhang was not Plaintiff's supervisor and was not aware that Plaintiff served in the military or that he was otherwise affiliated with the military until he filed the instant lawsuit. Zhang worked in a different department on a different team, and as such, did not know when Plaintiff was in or out of the office.

Plaintiff claims to have submitted one application prior to his layoff notification for a position in Regional Marketing. He testified that he "expressed interest" in other roles prior to his eventual layoff from Boeing, but did not submit any applications for said roles. Plaintiff is not sure if the roles were promotions and explicitly testified that he understood one Economics position he expressed an interest in "probably would not include a promotion…." Plaintiff also expressed an interest

in a Team Lead role in the NFP Department, even though he did not believe it was open for application. Plaintiff did not understand Team Lead to be a per se promotion - just a "possible promotion."

In June 2021, Tecklenburg retired from Boeing. Brian Siler replaced Tecklenburg as Plaintiff's supervisor. Senior Marketing Manager over Airline Network & Fleet Strategy, Scott Adams ("Adams"), became Plaintiff's direct supervisor in July of 2022.

Boeing constantly monitors head counts and the Company's level of employment in addition to what's needed to meet the needs of the business. In 2024, Boeing was made the decision to conduct a Reduction in Force ("RIF") given the Company's financial position and performance. Adams was responsible for reducing the NFP Department by one NFP Analyst.

In making the decision as to which employee should be laid off, Boeing considered the overall quantity and quality of an Analyst's work. Adams determined that Plaintiff was the bottom performer on the NFP team at the time of the 2024 RIF.

Adams previously removed Plaintiff from the LATAM and Avianca accounts for failing to meet deadlines, failing to develop compelling NFP analysis, receiving negative feedback regarding Plaintiff's performance, and ultimately failing to advance marking efforts on those accounts. Plaintiff's comparative performance rendered him the only suitable choice

for the impending RIF as Adams did not have to remove other NFP Analysts from any accounts, nor did he receive negative feedback about other NFP Analysts.

Plaintiff did not make any complaints or comments suggesting a belief that he was discriminated against on the basis of military status prior to his separation from Boeing.

Plaintiff took intermittent, short-term military leave during his employment with Boeing. Specifically, he took 12 military leave days in 2016, 21 days in 2017, 17 days in 2018, 5 days in 2019, 12 days in 2020, and 3 days in 2021. In total, Plaintiff took 70 total military leave days over the course of his nearly 9- year tenure of employment. Then Plaintiff retired from the military in May of 2022.

Summary judgment is appropriate where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant is not required to show that there is no factual dispute whatsoever, but rather, "the requirement is [only] that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added). "A court should enter summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial.'" Hooven-Lewis, 249 F.3d at 265 (quoting Celotex, 477 U.S. at 322). When the movant has presented "an adequately supported summary judgment motion," the nonmovant cannot survive summary judgment by showing "the mere existence of a scintilla of evidence." Giles v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 702 (4th Cir. 2023); Anderson, 477 U.S. at 248. Furthermore, "conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020); Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010) ("The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.").

Plaintiff asserts two claims for USERRA discrimination under 38 U.S.C. § 4311(a). In Count I, Plaintiff alleges that Boeing deprived him of rights and benefits of employment by removing him from the Hawaiian Airlines account in 2017; failing to replace the account with equally prestigious assignments; denying him travel opportunities; and denying him promotions. Count II alleges that Boeing wrongfully terminated Plaintiff's employment.

Plaintiff points to the Vietnam Era Veterans Readjustment and Assistance Act, 38 U.S.C. § 4212 ("VEVRAA") in his claims

under USERRA. Plaintiff contends that VEVRAA guarantees the right to employment and advancement in employment due to Boeing's status as a covered federal contractor and his status as a protected veteran. While Plaintiff's contention that he is not asserting a claim directly under VEVRAA, he simultaneously alleges: "This action is also based on a government contractor's failure to advance in employment a qualified veteran covered under the Vietnam Era Veterans' Readjustment Assistance Act."

Plaintiff testified that by not affording him retention, promotion, and advancement, Boeing violated his rights under USERRA or VIVA [sic-VEVRAA]. However, VEVRAA has a limitation on private suits. Whether standing alone or connected to a USERRA claim, Plaintiff cannot pursue redress in federal court for purported VEVRAA violations.

The Fourth Circuit has found that VEVRAA does not recognize a private right of action. See Armstrong v. Rolm A. Siemans Co., No. 97-1222, 1997 WL 705376, at *3 (4th Cir. 1997) (affirming dismissal of a disabled veteran's claims under VEVRAA because VEVRAA does not recognize a private cause of action).

Plaintiff cannot circumvent VEVRAA's limitation on private suit by anchoring the claim to USERRA. Further, nothing in the statute guarantees covered veterans a right to advancement in employment or insulates them from termination.

To the extent Plaintiff contends VEVRAA protections are a "right or benefit" under USERRA, that argument must fail as well. Every federal court to address the issue has rejected the argument that a veterans' preference statute or employer policy adopted pursuant to such a statute is a right or benefit under USERRA.

For Plaintiff to prevail on his claims under Section 4311(a) of USERRA, Plaintiff must demonstrate by a preponderance of the evidence that (1) Boeing took an adverse action against him, (2) that he performed, applied to perform, or had an obligation to perform as a member in the uniformed services, and (3) that Boeing was motivated by his service in taking the challenged action. Kitlinski v. United States Department of Justice, 994 F.3d 224, 229 (4th Cir. 2021) (citing Harwood v. American Airlines, Inc., 963 F.3d 408, 414-15 (4th Cir. 2020)). Motivation is demonstrated upon proof that service is a "substantial factor" in the employer's decision. Bunting v. Town of Ocean City, 409 F. App'x 693, 695 (4th Cir. 2011). If Plaintiff meets his burden, Boeing is entitled to an affirmative defense to liability if it can show that it would have taken the same actions in the absence of Plaintiff's Reserve service. 38 U.S.C. § 4311(c)(1).

Plaintiff's USERRA discrimination claims fail on the first and third elements of the prima facie case.

Plaintiff contends that Boeing was motivated by his Reserve service in making the decision to remove him from the Hawaiian Account in 2017 because he had additional service obligations in 2017 arising from his assignment to take command of a unit. Notably, Plaintiff does not allege that Boeing was motivated by his protected status concerning subsequent account assignments, travel opportunities, promotion, or termination. Instead, he attributes the alleged loss of opportunity in his career and eventual termination to the loss of the Hawaiian Airlines account. Plaintiff cannot establish a USERRA violation based on a cascade of events stemming from conduct in 2017, which does not itself violate USERRA. Plaintiff must instead come forward with evidence that each of the employment actions he challenges were motivated by his uniformed service.

As to the first requirement, Plaintiff did not suffer an adverse employment action as to his removal from Hawaiian, subsequent account assignments, or travel opportunities.

Boeing removed Plaintiff from the Hawaiian account along with other team members who are not service members. Such evidence undermines a conclusion that Plaintiff has suffered an adverse action. Plaintiff has failed to offer evidence that he suffered an adverse action with respect to subsequent account assignments and travel opportunities. As an initial matter, Hawaiian was designated a Tier 2 account, not a Tier 1 account.

11

The evidence shows that Plaintiff worked a combination of accounts for the duration of his employment both before and after service commitments. Minor variations between work assignments before and after service obligations are insufficient to demonstrate the deprivation of a benefit of employment under USERRA. See Francis v. Booz, Allen & Hamilton (BAH), 452 F.3d 299, 306 (4th Cir. 2006).

As to account size, Plaintiff admits he has no evidence that the Tier of the account or "Sales Wins" are related to compensation, bonus, or career progression. He admits that he knows of no NFP Analyst who has received a bonus or promotion because of a Sales Win. To the point made by his manager, Scott Adams, regarding why consideration of Tier designations would not make sense for compensation or promotion purposes, smaller airlines often have less resources in house which creates greater opportunity for NFP Analysts. Plaintiff admits this is true. Additionally, Plaintiff's workload largely remained the same for the duration of his employment with a mix of Tier 1, 2 and 3 accounts, and the same is true of other NFP Analysts. There are no patterns or other record evidence in this case suggesting that certain analysts had more "prestigious accounts" than anyone else, or that any of those who Plaintiff identifies as purported comparators received a bonus or promotions because of account size or Tier designation. Plaintiff admits he has no

12

such evidence, only his own speculation. This is insufficient to carry his burden of proof.

As to travel opportunities, Plaintiff has likewise failed to demonstrate how he suffered an adverse action. Plaintiff admits that travel was necessarily limited for all NFP Analysts due to the COVID pandemic. As to non-COVID years, the evidence does not support a conclusion that Plaintiff was denied travel or that his travel opportunities were limited to "less desirable locations," which is nonetheless an immeasurable metric that is based on plaintiff's subjective preference. Plaintiff stated in a 2019 performance evaluation: "I had great opportunities to travel." Plaintiff later attempted to controvert this statement in his deposition by arguing that those destinations may not have been as "desirable" because of account size and overall travel experience. However, work-related travel at Boeing is not intended as a vacation and nothing in USERRA requires employers to consider an employee's individual travel preferences.

Next, Plaintiff has identified no evidence of improper motive. "'Crucially, a plaintiff must prove that discrimination on the basis of service was a motivating factor in an employment action to recover under § 4311.'" Kitlinski, 994 F.3d at 230 (quoting Harwood, 963 F.3d at 414–15)). This requires a plaintiff to come forward with direct or circumstantial evidence that would cause a rational factfinder to conclude that an

13

employer considered or took into account an employee's protected status in the decisional process. See Kitlinski, 994 F.3d at 230. Plaintiff contends that Boeing was motivated by his Reserve service in making the decision to remove him from the Hawaiian Account in 2017. Plaintiff attributes the remaining ancillary actions including his termination 7 years later to his removal from the Hawaiian account, but not his service obligations. By Plaintiff's own admission, if Boeing's decision to remove him from the Hawaiian account was not motivated by his service, then all his other claims must fail as they are based on the Hawaiian account removal and not his protected status.

Plaintiff's removal from the Hawaiian account was the result of his focus on the sale of 787-8s, despite the expectation for the campaign to focus on 787-9s and 787-10s. Plaintiff has offered no evidence that Mounir's decision was motivated by his Reserve service. Plaintiff's testimony that Mounir "tr[ied] to find faults and criticisms" of his work are not indicative of discriminatory intent and have nothing to do with Plaintiff's Reserve service. Indeed, Plaintiff testified he has only met Mounir on one occasion and that Mounir never made remarks about his service.

To the extent Plaintiff relies on statements of two coworkers, the claim still fails because the statements are insufficient as a matter of law to establish discriminatory

14

motive. Stray remarks by non-decisionmakers are insufficient to establish discriminatory intent.

Plaintiff alleges that before his removal from the Hawaiian account, a coworker, Cheryl Zhang commented he was "never around." Plaintiff alleges a separate coworker, Brian Kaku, complained to Robertson he had to cover for him one weekend, but Plaintiff cannot recall if he was on vacation or military duty at the time. She further testified that she worked in a different department and did not know when Robertson was in or out of the office. Zhang was also a coworker of Robertson, not a supervisor, and not involved in decisions related to the Hawaiian Account. This is evidenced by the fact that Zhang was also removed as an analyst from the Hawaiian Account shortly after Robertson. As to the alleged complaint by Brian Kaku that he had to cover for him for a weekend, Plaintiff admits Kaku was also a coworker and that he had no input to Robertson's performance at Boeing. Plaintiff admits he was possibly on vacation and has offered no evidence that he was, in fact, on military duty during the weekend in question.

Accepting the alleged statements as true for summary judgment purposes, stray remarks by non-decision makers are insufficient to prove service-based discriminatory animus. Harwood v. American Airlines, Inc., 963 F.3d 408, 415-16, (4th Cir. 2020) (scattered employee comments made over 15 years

15

before an airline's allegedly discriminatory failure to promptly reemploy a pilot, and the absence of any allegation that anyone connected with reemploying him made the comments, warranted dismissal of the pilot's discrimination claim).

To demonstrate antimilitary bias, comments and actions must be substantially more egregious than those alleged by Robertson; made by a supervisor or someone involved in the decisional process; and proximately connected to an adverse employment action.

Plaintiff has not alleged remarks or conduct sufficient to raise an inference that Boeing was motivated by his service in making the decision to remove him from the Hawaiian account or any other challenged action. Zhang and Kaku were Robertson's coworkers, not supervisors, and neither participated in decisions concerning the Hawaiian account or had input to Plaintiff's job performance. The fact that Boeing also removed Zhang from the account provides further evidence that Boeing's decision had nothing to do with Robertson's protected status.

Further, there is no causal connection between Plaintiff's service and the remaining events Plaintiff challenges (post-Hawaiian) as he attributes those events to his removal from Hawaiian (and not his uniformed service obligations). Indeed, Plaintiff retired from the military in May of 2022. Plaintiff therefore had no service obligations after May of 2022. This

16

fact is undisputed. Moreover, in the years prior to his retirement, Robertson took just 5 days of leave in 2019, 12 days in 2020, and 3 days in 2021. No reasonable factfinder could conclude that Boeing denied Robertson promotions or terminated his employment because of a mere 20 days of military service over a three-year period, particularly given that the service commitment ended altogether 2 years before his termination. Courts have consistently held that there is no temporal proximity when a triggering event was two to three years prior to an adverse action.

Plaintiff's subjective views about his performance or quibbles with Boeing's decisional process do not create a genuine factual dispute. "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir.1998); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir.1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."); Hill v. Michelin N. Am., Inc., 252 F.3d 307, 315 (4th Cir. 2001). Plaintiff's testimony that his job performance with Boeing was "excellent" is irrelevant to the question of USERRA

17

discrimination. Boeing removed Plaintiff from the Hawaiian account due to misalignment between Robertson's work product and the account objectives. Defendant has already addressed the issue of subsequent account assignments and travel opportunities which do not amount to adverse action. As to promotions, Robertson claims he applied for only one position as Regional Marketing Director prior to his layoff, but he does not recall dates or identity of the decision maker and is unsure whether the position would have been a promotion. He contends he "expressed interest" in other positions but similarly does not know if the roles were promotions, the dates he expressed an interest, or what managers he may have spoken with. Such vague allegations are insufficient to establish a failure to promote claim. The coveted role is necessarily required to be a promotion position.

As for promotions through an informal process, Plaintiff similarly testified he cannot recall which managers he may have talked to or the dates of any such discussions. Plaintiff does not contend he ever spoke with Scott Adams about a promotion. Even assuming he had, it is undisputed Robertson had retired from the military when Adams became his manager, thus negating any reasonable inference that he was not moved to a Level 5 role because of his uniformed service obligations (which no longer existed). Plaintiff's former manager, Bruce Tecklenburg, for the

18

period from 2015 to 2020, believed that Robertson's performance was not aligned with the expectations of a Level 5 NFP Analyst, and therefore did not move him up. Tecklenburg retired in 2020 and thus had no say in anything after 2020. Plaintiff also testified he does not believe Tecklenburg did anything to discriminate against him because of his service. Plaintiff cannot establish a failure to promote claim on such thin allegations. He must, at a minimum, come forward with proof that Boeing denied him promotions and advancement because of his service, and he has not done so.

The same conclusion of the layoff decision. Plaintiff offers only conclusory assertions which are insufficient to prove USERRA discrimination. Hill v. Michelin N. Am., Inc., 252 F.3d 307, 315 (4th Cir. 2001); Francis v. Booz, Allen & Hamilton (BAH), 452 F.3d 299, 306 (4th Cir. 2006). Boeing terminated Plaintiff pursuant to a reduction in force that impacted thousands of employees and that was initiated because of economic factors and market conditions at the time. As to the NFP team, Boeing considered the overall quantity and quality of an NFP Analyst's work. Management ranked each employee within impacted departments against one another based on their respective performance. Plaintiff's performance caused his manager, Scott Adams, to rank him last among NFP Analysts. Adams based his decision, in part, on the fact that he had to

19

previously remove Robertson from TAM Airlines and Avianca Airlines accounts due to quality and timeliness of deliverables. On those two accounts, Robertson failed to meet a few crucial internal deadlines and also failed to create compelling stories from an NFP perspective that helped "move the needle forward." Adams also received a complaint from a Regional Marketing Director, Robert Moss, concerning deficiencies in a network slide deck prepared by Robertson.

Adams did not have to remove any other NFP Analysts from two accounts and did not receive any similar complaints about the quality of other NFP Analysts' work. Robertson does not dispute that Adams brought these concerns to his attention. Robertson quibbles about whether the issues Moss raised were just questions, but he does not dispute he failed to meet an important deadline.

Plaintiff contends: "I'm allowed to take vacation or go on military leave." However, Robertson was not in the military at the time. He retired in May of 2022 and therefore had no military obligations as of the date Adams became his manager, or when the above issues occurred (in 2023) which contributed to the layoff decision. Robertson eventually admitted in his deposition that the deficiencies Adams considered as part of the decisional process for the reduction in force were unrelated to his military service.

Given the impossibility of any nexus between Plaintiff's military service and his termination, Plaintiff's claims fail at the prima facie stage, and Boeing need not explain its justifications.

The Court finds Plaintiff's allegations are insufficient to create a genuine issue of material fact as to whether Boeing took adverse action against Robertson because of his service. Plaintiff has offered no evidence to this effect. The summary judgment record demonstrates that Boeing would have taken the same actions with respect to all the challenged decisions in this case regardless of Plaintiff's uniformed service obligation or military affiliation. Boeing is entitled to summary judgment.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

An appropriate Order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October ⁄ , 2025